**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrew James Johnston,<br><br>    Petitioner,<br><br>v.<br><br>M. Gutierrez, *et al.*,<br><br>    Respondents. | No. CV-24-0005-TUC-SHR (EJM)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is Petitioner Andrew J. Johnston's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody ("Petition") (Doc. 1). Respondent has filed a Return and Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 10), and Petitioner replied (Doc. 11). Also pending is Petitioner's Renewed Motion for Preliminary Injunction and/or TRO (Doc. 29), and Respondent filed his response (Doc. 30). The Petition and motion are ripe for adjudication.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter was referred to Magistrate Judge Markovich for Report and Recommendation. The Magistrate Judge recommends that the District Court deny the Petition (Doc. 1) and Renewed Motion for Preliminary Injunction.

**I.    BACKGROUND**

At the time Petitioner filed his Petition (Doc. 1), Petitioner was an inmate incarcerated at the Federal Correctional Institution in Tucson, Arizona ("FCI Tucson").

*See* Petition (Doc. 1). Petitioner remains incarcerated at FCI Tucson. *See* Fed. Bureau of Prisons ("BOP") Inmate Locater, https://www.bop.gov/inmateloc/ (last visited Sept. 23, 2025). Petitioner is serving a 151-month term of imprisonment for bank robbery in violation of 18 U.S.C. § 2113(a). *See United States v. Johnston*, No. 1:17-CR-517(1), Amended Judgment in a Criminal Case (N.D. Ill. May 28, 2021), ECF No. 403; *United States v. Johnston*, No. 1:17-CR-517-1, Order (N.D. Ill. May 28, 2021), ECF No. 402; *United States v. Johnston*, No. 1:17-CR-517-1, Order (N.D. Ill. Jan. 10, 2019, ECF No. 297; *United States v. Johnston*, No. 1:17-CR-517-1, Indictment (N.D. Ill. Aug. 23, 2017), ECF No. 31.[1] Petitioner's projected release date is April 15, 2028. *See* Fed. BOP Inmate Locater, https://www.bop.gov/inmateloc/ (last visited Sept. 23, 2025). At sentencing, Petitioner was designated as a career offender based upon two (2) prior convictions for bank robbery. *United States v. Johnston*, 814 Fed. App'x 142, 147 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1257 (2021). In affirming Petitioner's conviction, the Seventh Circuit rejected Petitioner's arguments and reiterated its prior determination "that federal bank robbery by 'intimidation' is a categorical crime of violence because a threat of such force is implied in the intimidation element." *Id*. (citing *United States v. Williams*, 864 F.3d 826, 830 (7th Cir. 2017)). The appellate court further observed that Petitioner "d[id] not dispute that he has two prior convictions for bank robbery, [and] the district court did not err in designating him a career offender." *Id*. (citing U.S.S.G. § 4B1.1(a)).

On January 2, 2024, Petitioner filed a Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1). Petitioner asserts the

---

[1] "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). United States District Court ("USDC") for the Northern District of Illinois orders and proceedings are proper material for judicial notice. *See Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006) (taking judicial notice of orders and proceedings before another tribunal). The Amended Judgment in a Criminal Case notes the offense as 18 U.S.C. Section 2113(s) Bank Robbery. *United States v. Johnston*, No. 1:17-CR-00517(1), Amended Judgment in a Criminal Case (N.D. Ill. May 28, 2021), ECF. No. 403. This appears to be a typographical error, as all other charging documents and court orders cite to Section 2113(a) of Title 18, United States Code.

"[i]mplementation of Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) without accurate metric and/or definition of 'violence'" has resulted in improper categorization of his convictions for 13CR881 and 17CR517, "incorrectly keeping petitioner's recidivism risk score at a medium instead of a low - thereby depriving petitioner of the eligibility to apply his earned FSA time credits - which effects a liberty interest under *Preiser v. Rodriguez*, 411 U.S. 474, 498 (1973)." Petition (Doc. 1) at 1, 4–5 (italics added).[2] Petitioner urges that "[t]here should be one federal definition of a 'crime of violence' and/or 'robbery' that applies evenhandedly across the board to promote fairness and integrity where determinations that effect liberty interests are categorized by the determination that an offense is violent." Petition (Doc. 1) at 5. Petitioner seeks "a writ of habeas corpus that invalidates PATTERN's metric for 'violence' and/or compels that PATTERN's metric for 'violence' be clarified/adjusted to identically match *Taylor* and P.S. 5162.05, § 4e's federal definition of a 'crime of violence[.]'" *Id*. at 7. Petitioner additionally seeks an order directing "the BOP to remove 'violence' points from Petitioner's PATTERN score for 13CR881 and 17CR517." *Id*.

On November 4, 2024, Petitioner filed a Motion for Preliminary Injunctive Relief (Doc. 13), Respondent filed a response (Doc. 23), and Petitioner replied (Doc. 24). On May 16, 2025, the Honorable Scott H. Rash denied the motion. Order 5/16/2025 (Doc. 28). On July 14, 2025, Petitioner filed a Renewed Motion for Preliminary Injunctive Relief and/or TRO (Doc. 29) and Respondent filed a response (Doc. 30). The Court has reviewed all documents in resolving the instant habeas petition.

## II.   THE INSTANT HABEAS

### A.  *Jurisdiction—In General*

"Federal courts are always 'under an independent obligation to examine their own

---

[2] Unless otherwise noted, page citations refer to the Case Management/Electronic Case Filing ("CM/ECF") page number for ease of reference.

jurisdiction,' . . . and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Id.* at 864. Therefore, before proceeding to any other issue a court must establish whether a habeas petition is filed pursuant to § 2241 or § 2255 to determine whether jurisdiction is proper. *Id.* at 865.

Here, Petitioner does not claim that the sentencing court imposed an illegal sentence; rather he seeks relief with respect to the application of the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) in determining his eligibility to use First Step Act time credits. As such, Petitioner is challenging the manner, location, or condition of the execution of his sentence. *See e.g., Rogers v. United States*, 180 F.3d 349 (1st Cir. 1999) (Section 2241 petition is appropriate vehicle to challenge the correctness of a jail-time credit determination, once administrative remedies have been exhausted); *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc), ("[c]hallenges to the validity of any confinement or to the particulars affecting its duration are the province of habeas corpus[.]") (quoting *Muhammad v. Close*, 540 U.S. 749, 750 (2004)); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991) (a prisoner's challenge to the "manner in which his sentence was executed . . . [is] maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241"). Such a challenge must be brought pursuant to § 2241 in the custodial court. At the time of filing the Petition (Doc. 1), Petitioner was incarcerated at FCI Tucson in Arizona. Accordingly, this Court has jurisdiction over this matter. *Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990).

. . .

. . .

- 4 -

**B. Exhaustion**

    **1. In General**

The Ninth Circuit Court of Appeals has stated:

> [28 U.S.C. § 2241] does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus. [Footnote omitted.] However, we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241.

*Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). "The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54–55 (1995). "Nevertheless, '[p]rudential limits like jurisdictional limits and limits on venue, are ordinarily not optional.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (alterations in original) (quoting *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006)).

    "Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Id.* (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citations omitted). Exhaustion may be excused if pursuing an administrative remedy would be futile. *Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th

Cir. 1993).

If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim.  *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994) (citing *Francis*, *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990); then citing *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986)).  If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation.  *See Francis*, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); *Murray v. Carrier*, 477 U.S. 478, 492 (1986) (cause and prejudice test applied to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906–08 (9th Cir. 1986) (cause and prejudice test applied to *pro se* litigants).

## 2. Exhaustion in the Instant Case

Here, Respondent asserts Petitioner failed to exhaust his administrative remedies and urges his Petition (Doc. 1) be dismissed accordingly.  Petitioner acknowledges his failure to exhaust, but asserts that because he is challenging a BOP policy, any exhaustion attempts would have been futile.  Petition (Doc. 1) at 3.[3]  The Ninth Circuit Court of Appeals has recognized that:

> the requirement of exhaustion of remedies [is to] aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.

*Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983).  In this case, the factual record is

---

[3] Additionally, in reply, Petitioner relies on several unrelated district court decisions to urge that "[R]espondent's failure to exhaust argument is precluded and/or moot."  Petr.'s Reply (Doc. 11) at 1–2.  The various district court cases Petitioner relies on have no relevance to this cause of action.  The Court finds Respondent's argument regarding exhaustion is neither precluded nor moot.

- 6 -

adequately developed, and nothing in the record suggests that further administrative review would aid judicial review. The Court will consider the Petition (Doc. 1).

### C.    Legal Standards

#### 1.  First Step Act of 2018

On December 21, 2018, the First Step Act of 2018 ("FSA") was enacted into law. Pub. L. No. 115-391, 132 Stat. 5194. "The act was the culmination of a bipartisan effort to improve criminal justice outcomes, as well as to reduce the size of the federal prison population while also creating mechanisms to maintain public safety." Fed. BOP, *An Overview of the First Step Act*, *available at* https://www.bop.gov/inmates/fsa/overview.jsp (last visited September 29, 2025). "As part of the FSA, Congress directed the BOP to implement reentry initiatives, including programming and programming incentives, good-time credit, and compassionate release opportunities." *Mars v. Heisner*, 2023 WL 4977335, at *1 (D. Ariz. June 26, 2023). Congress further directed the Attorney General to develop a risk and needs assessment system, to be used to determine the recidivism risk of each prisoner at intake, assess and determine a prisoner's risk of violent or serious misconduct, determine the type and amount of evidence-based recidivism reduction program appropriate for each prisoner, perform periodic recidivism risk reassessment of each prisoner, reassign prisoners to the appropriate evidence-based recidivism reduction programs or productive activities, determine when to provide incentives and rewards for participation in evidence-based recidivism reduction programs or productive activities, determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624, and determine the appropriate use of audio technology for program course materials. 18 U.S.C. § 3632(a). "Any inmate sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense[,] [except those serving a term of imprisonment for an offense specified in 18 U.S.C. § 3632(d)(4)(D),] or any person in the custody of the Bureau, is eligible to earn FSA Time Credits[.]" 28 C.F.R. § 523.41(d).

An eligible prisoner "shall earn 10 days of time credits for every 30 days of

successful participation in evidence-based recidivism reduction programming or productive activities[,]" and can earn additional 5 days of time credits per every 30 days if they have been determined by the BOP to be at a minimum or low risk for recidivating. 18 U.S.C. § 3632(d)(4). "Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release[,] [and] [t]he Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). Section 3624(g) defines an "eligible prisoner" as one who (A) has earned time credits under the risk and needs assessment system; (B) "has shown through the periodic risk assessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment"; (C) "has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law"; and (D) has either (i) in the case of a prisoner being placed in prerelease custody, (I) "been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments"; or (II) "has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison," if the warden determined that (aa) the prisoner would not be a danger to society if transferred to prerelease custody; (bb) the prisoner had made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and (cc) the prisoner is unlikely to recidivate, or (ii) in the case of a prisoner being placed in supervised release, "been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner." 18 U.S.C. § 3624(g)(1)(A)–(D).

The BOP may apply FSA Time Credits toward prerelease custody or early transfer to supervised release only if an eligible inmate has: (1) "Earned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment"; (2) "Shown through the periodic risk reassessments a demonstrated recidivism risk reduction

or maintained a minimum or low recidivism risk, during the term of imprisonment"; and (3) "Had the remainder of his or her imposed term of imprisonment computed under applicable law." 28 C.F.R. § 523.44(b). In addition to satisfying these criteria, an inmate must (1) have maintained a minimum or low recidivism risk through his last two risk and needs assessments; or (2) had a petition to be transferred to prerelease custody or supervised release approved by the Warden before the BOP may apply earned FSA Time Credits toward the inmate's prerelease custody. 28 C.F.R. § 523.44(c). Prior to approving an inmate's petition to transfer, the Warden must find that the prisoner (i) would not be a danger to society if transferred to prerelease custody or supervised release; (ii) has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and (iii) is unlikely to recidivate. 28 C.F.R. § 523.44(c)(2).

## 2. Risk and Needs Assessment

The FSA tasked BOP with "administering the 'risk and needs assessment system[.]'" *Gonzalez v. Herrara*, — F.4th —, 2025 WL 2396495, *9 (9th Cir. Aug. 19, 2025). Congress has defined the term "risk and needs assessment tool" to mean:

> [A]n objective and statistically validated method through which information is collected and evaluated to determine—
>
> (A) as part of the intake process, the risk that a prisoner will recidivate upon release from prison;
>
> (B) the recidivism reduction programs that will best minimize the risk that the prisoner will recidivate upon release from prison; and
>
> (C) the periodic reassessment of risk that a prisoner will recidivate upon release from prison, based on factors including indicators of progress and of regression, that are dynamic and that can reasonably be expected to change while in prison.

18 U.S.C. § 3635(6). Consistent with the mandates of the FSA, BOP developed the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN). U.S. Dep't of Just., The First Step Act of 2018: Risk and Needs Assessment System 43 (2019), *available at*, https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-

needs-assessment-system.pdf (last visited October 2, 2025). "The PATTERN instrument is an assessment designed to predict the likelihood of general and violent recidivism for all BOP inmates over a three-year follow-up period." *Id*. "PATTERN includes a diverse set of factors to determine the risk of recidivism for BOP inmates; many of these factors are dynamic, meaning that an inmate's risk of recidivism could change with appropriate programming and services or could be affected by the inmate's behavior." U.S. Dep't of Just., The First Step Act of 2018: Risk and Needs Assessment System – UPDATE 7 (2020), *available at* https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system.pdf (last visited October 2, 2025). "PATTERN contains fifteen factors, eleven dynamic and four static, as follows:"

> Dynamic Factors:
> 1. Infraction convictions (any) current incarceration
> 2. Infraction convictions (serious and violent) current incarceration
> 3. Infraction-free (any) current incarceration
> 4. Infraction-free (serious and violent) current incarceration
> 5. Number of programs completed (any)
> 6. Work programming
> 7. Drug treatment while incarcerated
> 8. Non-compliance with financial responsibility[]
> 9. History of violence
> 10. History of escapes
> 11. Education score[]
>
> Static Factors:
> 12. Age at time of assessment
> 13. Instant violent offense
> 14. Sex offender (Walsh)
> 15. Criminal history score

*Id*. at 10–11.

"PATTERN calculates two risk scores: one for general recidivism risk and one specifically for violent recidivism risk." *Id*. at 12. "General recidivism is defined as a return to BOP custody or a re-arrest within three years of release from BOP custody, excluding all traffic offenses except driving under the influence (DUI) and driving while

intoxicated (DWI)." *Id*. "Violent recidivism is defined as a re-arrest for a suspected act of violence within three years of release from BOP custody." *Id*. at 12–13.

### 3. Availability of Judicial Review

Congress has delegated to the BOP the responsibility of "the management and regulation of all Federal penal and correctional institutions." 18 U.S.C. § 4042(a)(1). The Administrative Procedure Act ("APA") "provides a cause of action for persons 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute,' 5 U.S.C. § 702, but withdraws that cause of action to the extent that the relevant statute 'preclude[s] judicial review' or the 'agency action is committed to agency discretion by law,' [5 U.S.C.] § 701(a)." *Reeb v. Thomas*, 636 F.3d 1224, 1226 (9th Cir. 2011) (alterations in original). In Section 3625, Title 18, United States Code, Congress has specified that "[t]he provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." 18 U.S.C. § 3625. Thus, "[t]he plain language of this statute specifies that the judicial review provisions of the APA, 5 U.S.C. §§ 701–706 do not apply to 'any determination, decision, or order' made pursuant to 18 U.S.C. §§ 3621–3624." *Reeb*, 636 F.3d at 1227. "To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625. *Reeb*, 636 F.3d at 1227. "[S]ubstantive decision[s] by the BOP . . . to grant or deny a sentence reduction for completion of the program[] [are] not reviewable by the district court." *Id.* Similarly, "challenge[s] to the BOP's assessment of [an inmate's] recidivism risk level [are] not reviewable in a § 2241 habeas petition." *Tennigkeit v. Taylor*, No. 24-6322, 2025 WL 618740, *1 (9th Cir. Feb. 26, 2025) (citing *Reeb v. Thomas*, 636 F.3d 1224, 1226–28 (9th Cir. 2011); then citing 18 U.S.C. § 3625). A district court "does[, however,] have jurisdiction to decide whether the Bureau of Prisons acted contrary to established federal law, violated the Constitution, or exceeded its statutory authority pursuant to 18 U.S.C. §

3621." *Rodriguez v. Copenhaver*, 823 F.3d 1238, 1242 (9th Cir. 2016).

### D. PATTERN Definition of Violence

Petitioner asserts that "[t]here should be one federal definition of a 'crime of violence' and/or 'robbery' that applies evenhandedly across the board to promote fairness and integrity where determinations that effect liberty interests are categorized by the determination that an offense is violent." Petition (Doc. 1) at 5. Petitioner further asserts that his "alleged instant offense, an attempted bank robbery per the substantial step jury instruction given at trial, Case No. 1:17-CR-517, . . . is not a 'crime of violence' under *Taylor*, and should not therefore be treated as a 'Instant Violent Offense' for PATTERN purposes either." *Id.* Petitioner seeks the invalidation of "PATTERN's metric for 'violence' and/or compels that PATTERN's metric for 'violence' be clarified/adjusted to identically match *Taylor* and P.S. 5162.05, § 4e's federal definition of a 'crime of violence[.]" *Id.* at 7. Petitioner additionally seeks an order directing "the BOP to remove 'violence' points from Petitioner's PATTERN score for 13CR881 and 17CR517." *Id.* Petitioner's arguments are without merit and shall be denied.

#### 1. **Petitioner is not entitled to judicial review**

As explained in Section II.C.3., *supra*, Petitioner is not entitled to judicial review of BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621. *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011). In enacting Section 3625, Title 18, United States Code, Congress expressly stated, "This section makes clear that certain of the provisions of the Administrative Procedure Act do not apply to any determination, decision, or order of the Bureau of Prisons." Senate Rep. 98-225, P.L. 98-473, Comprehensive Crime Control Act of 1984, 1984 U.S.C.C.A.N. 3182, 3332, *available at* 1983 WL 25404, at *149 (Aug. 4, 1983). The Ninth Circuit Court of Appeals has also observed that Congress has bestowed discretion upon the BOP for "executing the FSA's risk and needs assessment system." *Gonzalez v. Herrera*, — F.4th —, 2025 WL 2396495, at *11 (9th Cir. Aug. 19, 2025). Accordingly, the Ninth Circuit has unequivocally held that Petitioner's "challenge to the BOP's assessment of his recidivism

risk level is not reviewable in a § 2241 habeas petition." *Tennigkeit v. Taylor*, No. 24-6322, 2025 WL 618740, *1 (9th Cir. Feb. 26, 2025) (citing *Reeb v. Thomas*, 636 F.3d 1224, 1226–28 (9th Cir. 2011); then citing 18 U.S.C. § 3625); *see also Gutierrez v. I.N.S.*, 298 F.3d 824, 830 (9th Cir. 2002) (holding that habeas petitions which seek to challenge a discretionary decision are not within the scope of § 2241 and should be denied).[4]

In reply, Petitioner asserts that "[R]espondent admits/concedes through silence that PATTERN's definition of violence flouts *Taylor*, Program Statement 5162.05, § 4e, and the U.S. Sentencing Guidelines definition of 'robbery' per Amendment 822." As will be discussed, *infra*, Petitioner's contention is without merit. To be clear, PATTERN's definition of violence is within BOP's discretion and not reviewable on habeas.[5] The Court finds Petitioner's habeas petition should be dismissed.

### 2. Petitioner's conviction is a crime of violence

Petitioner asserts that his "alleged instant offense, an attempted bank robbery per the substantial step jury instruction given at trial, Case No. 1:17-CR-517, . . . is not a

---

[4] Petitioner urges *Ramirez v. Phillips*, No. 2:23-cv-02911-KJM-JDP, 2023 WL 8878993 (E.D. Cal. Dec. 22, 2023) and *Iqbal v. Warden*, No. 1:23-cv-00111-EPG-HC, 2024 WL 1160071 (E.D. Cal. Mar. 18, 2024) demonstrate that 18 U.S.C. § 3632(d)(4)(C) is not discretionary and he is entitled to review. "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (citing 18 J. Moore et al., Moore's Federal Practice § 134.02(1)(d) (3d ed. 2011)). Furthermore, as delineated in Section II.C.1., *supra*, Section 3632(d)(4)(C) requires "[t]he Director of the Bureau of Prisons [to] transfer **eligible prisoners, as determined under section 3624(g)**, into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added). In *Ramirez*, the petitioner was an eligible prisoner who was released to home confinement with an ankle monitor, after which his FSA credits were cancelled. 2023 WL 8878993, at *1. In *Iqbal*, the petitioner was "the subject of a final administrative removal order issued via expedited removal proceedings, . . . and thus, . . . ineligible to apply time credits under the First Step Act." 2024 WL 1160071, at *4. As such, Iqbal's habeas petition was dismissed. *Id*. Neither of these cases are relevant here. Here, Petitioner is not an "eligible prisoner" under 18 U.S.C. § 3624(g). *See* Section II.E., *infra*.

[5] Additionally, "[a] habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law." *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011).

'crime of violence' under *Taylor*, and should not therefore be treated as a 'Instant Violent Offense' for PATTERN purposes either." Petition (Doc. 1) at 5. As an initial matter, Petitioner's conviction has been upheld by the Seventh Circuit and the Supreme Court of the United States denied review. *United States v. Johnston*, 814 Fed. App'x 142, 147 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1257 (2021). His characterization as the instant offense as "alleged" is patently false. Next, as the Court recognized in its Service Order (Doc. 5):

> In *United States v. Taylor*, 596 U.S. 845 (2022), the Supreme Court held that attempted Hobbs Act robbery does not qualify as a crime of violence under 18 U.S.C. § 924(c)(3)(A). A crime of violence is one in which the elements of the underlying crime require the government to prove "the use, attempted use, or threatened use of force." *Id*. at 860. Attempted Hobbs Act robbery does not require proof of these elements and is therefore not a crime of violence. *Id*.

Order (Doc. 5) at 2 n.1. The Hobbs Act is codified at 18 U.S.C. § 1951. Petitioner was convicted pursuant to 18 U.S.C. § 2113(a). As such, whether or not attempted robbery under the Hobbs Act is defined as a crime of violence is irrelevant to Petitioner's conviction. In affirming Petitioner's conviction, the Seventh Circuit rejected Petitioner's arguments and reiterated its prior holding "that federal bank robbery by 'intimidation' is a categorical crime of violence because a threat of such force is implied in the intimidation element."[6] *United States v. Johnston*, 814 Fed. App'x 142, 146–47 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1257 (2021) (citing *United States v. Williams*, 864 F.3d 826, 830 (7th Cir. 2017)). Petitioner does not cite, nor did the Court find, any cases overruling this holding.

In addition to his current conviction, Petitioner has two (2) prior convictions in the United States District Court for the Northern District of Illinois for bank robbery by intimidation pursuant to 18 U.S.C. § 2113(a). *See United States v. Johnston*, No. 1:13-

---

[6] The Seventh Circuit's rejections included Petitioner's apparent reliance on *Stokeling v. United States*, 586 U.S. 73, 82–83 (2019). *Johnston*, 814 Fed. App'x at 147. The appellate court observed that "*Stokeling* merely re-iterated that 'physical force' under the guidelines means 'force capable of causing physical pain or injury.'" *Id*. (citing *Stokeling*, 586 U.S. at 82–83).

- 14 -

CR-00881, Judgment in a Criminal Case (N.D. Ill. July 9, 2015), ECF No. 86; *United States v. Johnston*, No. 1:13-CR-00881, Indictment (N.D. Ill. Dec. 3, 2013), ECF No. 14; *United States v. Johnston*, No. 1:08-CR-01065, Judgment in a Criminal Case (N.D. Ill. Oct. 20, 2009), ECF No. 57; *United States v. Johnston*, No. 1:08-CR-1065, Indictment (N.D. Ill. Feb. 5, 2009), ECF No. 9. These prior convictions resulted in Petitioner's designation as a career offender at sentencing. *United States v. Johnston*, 814 Fed. App'x 142, 147 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1257 (2021). As the Seventh Circuit recognized on his direct appeal, Petitioner's convictions for bank robbery by intimidation are appropriately categorized as crimes of violence. *Id*.

### E. Petitioner Lacks a Liberty Interest in FSA Time Credits

"The Due Process Clause applies when government action deprives a person of liberty or property; accordingly, when there is a claimed denial of due process we have inquired into the nature of the individual's claimed interest." *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979). First, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Id*.; *see also Swarthout v. Cooke*, 562 U.S. 216, 220 (2011) (reiterating the *Greenholtz* rule and finding that states do not have an obligation to offer parole). Furthermore, when a statute confers discretion on a decisionmaker, no constitutionally protected liberty interest is created. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) ("If the decisionmaker is not 'required to base its decisions on objective and defined criteria,' but instead 'can deny the requested relief for any constitutionally permissible reason or for no reason at all,' . . . the State has not created a constitutionally protected liberty interest.").

Here, Petitioner asserts "there is nothing discretionary about the term 'shall,' a liberty interest is attached." Reply (Doc. 11) at 3. Petitioner's statement was made in opposition to Respondent's argument, with which the Court agreed, that PATTERN's definition of violence is within BOP's discretion and therefore unreviewable on habeas. *See* Section II.D.1, *supra*. Construing Petitioner's argument very liberally, however, the

Court will consider Petitioner's argument that the FSA time credits represent a liberty interest to be based on the Due Process clause. This argument also fails. The only potential liberty interest that could be at stake, is Petitioner's interest in an early release. The FSA makes an individual's ability to earn FSA time credits conditional—for example, individuals convicted for certain crimes are ineligible to earn credits. *See* 18 U.S.C. § 3632(d)(4). Furthermore, as relevant here, there is a difference between earning time credits and the application of those credits. As this Court has previously explained, "[t]he FSA allows prisoners who successfully complete evidence-based recidivism reduction programming or productive activities to **earn** time credits; however, time credits are only **applied** to eligible prisoners as defined in 18 U.S.C. § 3624(g)." *Johnston v. Colbert*, No. CV-22-0260-TUC-SHR (EJM), 2023 WL 9510557, at *8 (D. Ariz. Aug.15, 2023) (emphasis in original), *report and recommendation adopted by*, No. CV-22-00260-TUC-SHR, 2024 WL 418123 (D. Ariz. Feb. 5, 2024).[7] Petitioner does not meet the criteria of an "eligible prisoner" under Section 3624(g), because he has failed to demonstrate a recidivism risk reduction or maintained a minimum or low recidivism risk as required by the statute. *See* 18 U.S.C. § 3624(g)(1)(B). Whether or not Petitioner is entitled to have any FSA time credits applied toward an early release is conditioned on meeting the criteria of Section 3624(g). As such, no liberty interest has been created and no due process violation has occurred.

### F. No Authority to Compel Discretionary Agency Action

As explained in Section II.C.3., *supra*, "substantive decision[s] by the BOP . . . to grant or deny a sentence reduction for completion of the program[] [are] not reviewable by the district court." *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011). Logically, where a court lacks the authority to review the BOP's discretionary determinations, it

---

[7] Petitioner states that "[R]espondent's aggregate opposition is procedural, and is squarely under review by the Ninth Circuit at this time." Reply (Doc. 11) at 4 (citing *Johnston v. Colbert*, No. 24-850). This statement is unclear; however, the Ninth Circuit Court of Appeals affirmed the decision adopting the report and recommendation. *See Johnston v. Colbert*, No. 24-850, 2024 WL 4903725 (9th Cir. 2024).

cannot direct BOP to act contrary to that determination. *See id.* Accordingly, Petitioner is not entitled to relief. *See Mars v. Heisner*, No. CV-22-01933-PHX-SPL (JZB), 2023 WL 4977335, at *6 (D. Ariz. June 26, 2023) (citing *Habeas Corpus Res. Ctr. v. U.S. Dep't of Just.*, 816 F.3d 1241, 1247 (9th Cir. 2016)) ("because § 2241 does not convey authority to the Court to compel the BOP to grant prerelease custody to Petitioner, any relief Petitioner ultimately obtains would be purely advisory, and thus improper.")

### G. General/Specific Canon

Petitioner asserts that "this Court, and many courts across the nation, have yet to properly construct and interpret § 3632(d)(4)(C) in conjunction with § 3624(g)(1)(D)(i)(II)(aa)–(cc) for medium/high recidivism risk score prisoners[.]" Reply at 6. Petitioner opines that "a warden can opt to apply a medium/high recidivism risk prisoner's FSA time credits to only prerelease custody not early supervised release[.]" Reply (Doc. 11) at 8. Petitioner's attempted reliance on the general/specific canon of statutory construction is misplaced.

"[I]t is a commonplace of statutory construction that the specific governs the general[.]" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (citations omitted). "The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). Here, the general/specific canon is inapplicable, because there is no conflict between Section 3632(d)(4)(C) and 3624(g)(1)(D). Section 3632(d)(4)(C) states:

> Application of time credits toward prerelease custody or supervised release.—
>
> Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prelease custody or supervised release. The Director of the Bureau of Prisons shall transfer **eligible prisoners, as determined under section 3624(g)**, into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C) (emphasis added). Section 3632(d)(4)(C) instructs the

Director of BOP to 18 U.S.C. § 3624(g) regarding the rules for assessing whether or not a prisoner is eligible. Section 3624(g)(1)(D) represents the fourth requirement that must be met to be deemed an "eligible prisoner" for the application of FSA credits. Section 3624(g)(1)(A), (B), (C), and (D) are joined by the conjunction "and," meaning that all four requirements must be met prior to a prisoner being found eligible. Section 3624(g)(1)(B) requires a prisoner to have "shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment[.]" 18 U.S.C. § 3624(g)(1)(B). As such, medium or high recidivism risk score prisoners cannot be considered eligible for the application of FSA time credits.

### III.   INJUNCTIVE RELIEF

The Court agrees with Respondent, Petitioner's Renewed Motion for Preliminary Injunction and/or TRO (Doc. 29) is actually a motion for reconsideration. *See* Resp. to Petr.'s Renewed Mot. to Prelim. Inj. and/or TRO (Doc. 30) at 1. The undersigned does not have the authority to reconsider the District Judge's prior Order (Doc. 28).

To the extent that it is a new motion, the Court's resolution of Petitioner's habeas petition renders the requested relief moot. *See Quezada v. Scribner*, 604 Fed. App'x 550, 552 (9th Cir. 2015) (disposition of appeal rendered petitioner's motion for judicial notice moot). As such, the Court recommends that Petitioner's motion for preliminary injunction be denied as moot.

### IV.   RECOMMENDATION

For the reasons delineated above, the Magistrate Judge **RECOMMENDS** that the District Judge enter an order:

1)   **DENYING** Petitioner's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1); and

2)   Resolving Petitioner's Renewed Motion for Preliminary Injunction and/or

TRO (Doc. 29) as a motion for reconsideration, OR **DENYING** the motion **AS MOOT**.

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2), Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the Honorable Scott H. Rash. If objections are filed, the parties should use the following case number: **CV-24-0005-TUC-SHR**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.

Dated this 15th day of October, 2025.

Eric J. Markovich
United States Magistrate Judge